Erin Rose Ronstadt, SBN 028362
Kevin Koelbel, SBN 016599
Clayton W. Richards, SBN 029054
OBER PEKAS RONSTADT, PLLC
3030 N. 3rd Street, Suite 1230
Phoenix AZ 85012
Phone: (602) 277-1745
Fax: (602) 761-4443
erin@oberpekas.com
kevin@oberpekas.com
clayton@oberpekas.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Killian, | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| The Long Term Disability Plan for Non-Excluded Employees of Honeywell International, Inc., an ERISA benefit plan; Honeywell International, Inc., a plan subscriber, sponsor, and administrator; and Life Insurance Company of North America, claims administrator and a plan fiduciary, | |
| Defendants. | |

For his claims against the Long Term Disability Plan for Non-Excluded Employees of Honeywell International (the "Plan"); Honeywell International, Inc. ("Honeywell"); and the Life Insurance Company of North America ("LINA" or "Cigna") (collectively "Defendants"), Plaintiff Michael Killian ("Mr. Killian," or "Plaintiff") alleges as follows:

## *Jurisdiction, Venue And Parties*

1. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

2. Mr. Killian was a participant and beneficiary of the Plan as an employee of Honeywell.

3. Honeywell subscribed to the Policy, numbered VDT-0980084, which LINA issued to the Trustee of the Group Insurance Trust for Employers in the Manufacturing

Industry.

4. Honeywell is a Plan Sponsor, Plan Administrator, a Plan fiduciary, and Mr. Killian's former employer.

5. The Plan is a purported ERISA benefit plan established and maintained by Honeywell for the benefit of its employees.

6. LINA is the claims administrator and a Plan fiduciary.

7. Honeywell and LINA have a duty to administer the Plan prudently and in the best interests of all Plan participants and beneficiaries.

8. At the time Mr. Killian sought LTD benefits under the Plan, LINA administered claims for Honeywell under the Plan, acted on behalf of the Plan, and acted as an agent of Honeywell and/or the Plan to make final decisions regarding the payment of disability benefits for the Plan and to administer the Plan.

9. As an employee of Honeywell, Mr. Killian was covered by the Plan.

10. Mr. Killian currently resides in Maricopa County, Arizona and has been a resident of Maricopa County at all times since becoming a Plan participant.

11. The Plan and Honeywell have their principal places of business in the State of New Jersey.

12. LINA is domiciled in the Commonwealth of Pennsylvania and the State of Connecticut and is a wholly owned subsidiary of Connecticut General Corporation.

13. Connecticut General Corporation is a wholly-owned subsidiary of CIGNA Holdings, Inc., a Delaware holding company.

14. CIGNA Holdings, Inc. is a wholly-owned subsidiary of CIGNA Corporation, a Delaware holding Company.

15. Defendants LINA and Honeywell are licensed and authorized to do business in Maricopa County, Arizona, and reside and are found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

16. This Court has jurisdiction over the subject matter of this action under ERISA,

29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

17. Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

## **GENERAL ALLEGATIONS**

### *Mr. Killian's Disability*

18. Mr. Killian suffers from the residual effects of a brain aneurysm, enlarged aorta leaking, uncontrolled hypertension, an amaurosis fugax, ventricular tachycardia, and related symptoms including memory issues, general cognitive decline, and difficulties making simple judgments and decisions.

19. Mr. Killian stopped working in September 2015 after an amaurosis fugax event in his left eye—a temporary loss of vision resulting from a lack of blood flow to the retina.

20. Subsequent diagnostic exploration revealed Mr. Killian had a brain aneurysm in the supraclinoid segment of his left carotid artery—directly behind his left eye.

21. The danger of Mr. Killian's brain aneurysm is exacerbated by his history of hemodynamic instability: Mr. Killian suffers from poorly controlled hypertension despite compliance with a regimen of angiotensin-converting-enzyme inhibitor medication ("ACE inhibitors").

22. Neurologist Marisa Sosinsky, M.D. interviewed and evaluated claimant in October and November 2016 to ascertain whether he suffered from a resulting cognitive impairment.

23. She concluded Mr. Killian meets the DSM-5 diagnostic criteria for Unspecified Neurocognitive Disorder possibly resulting from neurovascular factors, given Mr. Killian's history of cardiac impairments.

24. Dr. Sosinsky noted Mr. Killian has psychometric deficits manifested in phonemic fluency, slow dominant hand-motor speed, and variable performance in lengthy testing requiring sustained visual attention.

25. Mr. Killian's malignant hypertension and brain aneurysm have caused neuropsychological symptoms.

1  26. Mr. Killian suffers from other severe impairments that contribute to his inability
2  to work, including tinnitus and gout.

3  27. To the present day, Mr. Killian's cerebrovascular condition remains under close
4  clinical observation as it is potentially life threatening.

*Plan Language*

6  28. Pursuant to the Plan, an individual is disabled for the first 24 months if he is "(1)
7  unable to perform the material duties of his Regular Occupation; and (2) unable to earn
8  80% or more of his Indexed Earnings from working in his Regular Occupation."

9  29. A person's "Regular Occupation" is "the occupation [he] routinely performs at
10 the time the Disability begins."

11 30. The policy provides that, in evaluating disability, LINA "will consider the duties
12 of the occupation as it is normally performed in the general labor market in the national
13 economy. It is not work tasks that are performed for a specific employer or at a specific
14 location."

15 31. The phrase "material duties" is undefined in the Policy.

16 32. After 24 months, the policy requires the individual be "(1) unable to perform the
17 material duties of any occupation for which [he] is, or may reasonably become, qualified
18 based on education, training or experience; and (2) unable to earn 80% or more of [his]
19 Indexed Earnings."

*Mr. Killian's Employment*

21 33. Honeywell hired Mr. Killian on October 25, 2004.
22 34. Honeywell employed Mr. Killian as a Principal Engineer.
23 35. This job required Mr. Killian to:
   a) Accept responsibility for control, direction, or planning of an activity;
   b) Perform repetitive or continuous activity according to set procedures;
   c) Influence people in the opinions, attitudes, or judgments about ideas or things;
   d) Perform a variety of duties, often from one task to another without loss of efficiency or composure;

-4-

e) Interpret feelings, ideas, or facts in terms of personal viewpoint;

f) Perform under stress when confronted with emergencies or unusual situations;

g) Perform with demands of precise attainment of set limits, tolerances, or standards;

h) Deal with people beyond giving and receiving instruction such as working as a member of a team or committee; and

i) Make generalizations, judgments, or decisions based on subjective or objective criteria such as with the five senses or factual data.

36. Mr. Killian's last date of work was October 2, 2015.

37. Mr. Killian stopped working due to the aforementioned medical impairments.

### *Mr. Killian's LTD Benefits*

38. By letter dated March 7, 2016, Mr. Killian submitted a claim for long-term disability ("LTD") benefits under the Plan.

39. On June 2, 2016, Cigna approved Mr. Killian's LTD claim effective April 4, 2016.

40. On September 15, 2016, LINA wrote a letter to Mr. Killian explaining it needed more information from his treating providers to determine continuing eligibility for LTD benefits.

41. Mr. Killian complied with LINA's request and provided updated medical information to support continuation of benefits.

42. On October 14, 2016, LINA terminated Mr. Killian's LTD benefits, asserting "the medical records [did] not support any functional impairment at [that] time."

43. LINA largely relied upon its Medical Director's and Nurse Case Manager's review of the file—individuals who had never spoken to, much less examined, Mr. Killian.

44. LINA failed to properly consider the medical evidence, including Mr. Killian's credible symptomology and the several assessments of his treating providers that supported his Disability.

45. Notably, LINA claimed Mr. Killian ceased working due to back pain, which is wholly inaccurate.

46. On August 29, 2017, Mr. Killian appealed LINA's adverse benefit determination (the "Appeal").

47. The Appeal included critical supplemental evidence, such as the opinions of a vocational expert, an examining neurologist who administered psychometric testing (Dr. Sosinsky), and Mr. Killian's own treating physician.

48. All of this evidence supported the conclusion Mr. Killian could not perform the material duties of his Regular Occupation or Any Occupation for which he is reasonably suited by virtue of his age, education, and work experience.

49. On January 5, 2018, LINA upheld its prior termination of LTD benefits (the "Final Denial").

50. LINA asserted Mr. Killian's intracranial aneurysm was "asymptomatic," and that he had no restrictions or limitations from a neuropsychological standpoint.

51. Once again, LINA primarily relied upon the opinions of its own physician reviewers – individuals who reviewed a paper file, but performed no actual examination.

52. The Final Denial directly contradicted the medical evidence on file, including the supportive opinion of Mr. Killian's own treating cardiologist.

53. Mr. Killian cannot perform the material duties of his Regular Occupation or Any Occupation and therefore satisfies the definition of Disabled under the Plan.

54. Mr. Killian exhausted his administrative remedies and timely filed this lawsuit.

**COUNT I**
**(Recovery of LTD Plan Benefits)**
**(Defendants LINA and the Plan)**

55. All other paragraphs are incorporated by reference.

56. The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

57. The Plan includes LTD coverage and a promise to provide LTD benefits until Mr. Killian is no longer Disabled under the terms of the Plan or he reached his Social Security Normal Retirement Age.

58. Mr. Killian continues to be Disabled from his Regular Occupation or Any

Occupation.

59. Mr. Killian has claimed the benefits under the Plan to which he is entitled.

60. Mr. Killian reasonably expected that his medical conditions met the requirements of Disability as defined by the Plan and that he would receive benefits under the Plan until he reaches his Social Security Normal Retirement Age or until he was no longer disabled.

61. Despite the coverage of Mr. Killian's Disability, LINA and the Plan improperly terminated his LTD benefits in breach of the Plan and ERISA.

62. LINA's and the Plan's conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

63. Even if Honeywell properly delegated discretionary authority to LINA, in light of LINA's wholesale and flagrant procedural violations of ERISA, Mr. Killian should be entitled to de novo review. See Halo v. Yale Health Plan, 819 F.3d 42, 60-61 (2d Cir. 2016) ("when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed de novo in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent and harmless.")

64. Instead of evaluating a participant's eligibility based on the applicable plan language and medical evidence, Mr. Killian is informed and believes that LINA makes claims decisions based on the claims resources and financial risk it faces on certain claims.

65. LINA wrongfully denied Mr. Killian's disability benefits without providing a coherent explanation for its denials, and in a way that conflicts with the plain language of the Plan, violating 29 U.S.C. §§ 1109, 1132.

66. LINA did not properly consider all of the available evidence when terminating Mr. Killian's benefits.

67. LINA failed to conduct a full and fair review.

68. LINA misstated medical evidence for its own financial benefit, e.g., it excessively relied on biased medical reviews provided by in-house medical consultants.

-7-

69. LINA abused its discretion by basing its decision on unreliable and inaccurate information. When confronted with this knowledge, LINA ignored the inaccuracies or created new reasons for denial.

70. Upon information and belief, LINA tainted its medical file reviewers by giving the reviewers inaccurate information regarding Mr. Killian, while also failing to provide its reviewers with all of the relevant evidence.

71. Upon information and belief, LINA provided its reviewers and vendors with internal notes and financial information about the claim, compromising their ability to make "independent" medical determinations and creating further bias in reviews.

72. LINA routinely emphasizes information that favors a denial of benefits while deemphasizing other information that suggests a contrary conclusion.

73. LINA failed to properly consider the opinions of Mr. Killian's treating and examining physicians.

74. In terminating LTD benefits, LINA disregarded evidence that Mr. Killian's conditions had not changed or improved.

75. LINA has no evidence that Mr. Killian's conditions changed or improved since it determined that he met the definition of Disabled in the Policy.

76. Upon information and belief, LINA used in-house reviewers in evaluating Mr. Killian's claim, because it knew that the in-house reviewers' recommendations would be unfavorable for the continuation of Mr. Killian's benefits.

77. None of LINA's reviewing physicians ever set forth any substantive reasons why Mr. Killian's treating doctors' opinions were incorrect.

78. LINA failed to explain why it credited the physician reviewers over Mr. Killian's treating physicians.

79. On information and belief, LINA engaged in claim discussions to decide the directions of appeals without having reviewed all of the medical evidence, demonstrating its predetermined path of terminating benefits.

80. LINA intentionally gathered evidence to support a decision to terminate Mr.

Killian's benefits.

81. Mr. Killian alleges upon information and belief that LINA has a parsimonious claims handling history.

82. LINA failed to conduct a "meaningful dialogue" regarding Mr. Killian's claim.

83. Even if the abuse of discretion standard of review applies, LINA abused its discretion, because its decision terminating Mr. Killian's disability benefits was arbitrary and capricious and caused or influenced by LINA's, its reviewing physicians', and its vendors' financial conflicts of interest. These conflicts of interest precluded the full and fair review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

84. Mr. Killian is entitled to discovery regarding the effects of the procedural irregularities and structural conflict of interest that infiltrated the claims handling process and also regarding the effects of LINA's reviewing physicians', its employees', and its vendors' financial conflicts of interest, biases, and motivations on the decision to terminate Mr. Killian's LTD claim.

85. Under the de novo standard of review, Mr. Killian is entitled to discovery regarding, among other things, the credibility of LINA's medical reviews and LINA's lack of partiality due to its financial conflicts of interest. Opeta v. Nw. Airlines Pension Plan for Contract Employees, 484 F.3d 1211, 1217 (9th Cir. 2007) (under the de novo standard of review, new evidence may be admitted regarding, among other things: "the credibility of medical experts… [and] instances where the payor and the administrator are the same entity and the court is concerned about impartiality" (quoting Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1026-27 (4th Cir. 1993)).

86. Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal law, Mr. Killian is entitled to recover all benefits due under the terms of the Plan, and to enforce his rights under the Plan.

87. Mr. Killian is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of his disability benefits. He is entitled to a restoration of the status quo ante before LTD benefits were

-9-

wrongfully terminated.

88. Pursuant to 29 U.S.C. § 1132(g), Mr. Killian is entitled to recover his attorneys' fees and costs incurred herein.

89. Mr. Killian is entitled to prejudgment interest on the benefits to which he is entitled and on his damages at the highest legal rate until paid.

**COUNT II**
**(Breach of Fiduciary Duty)**
**(LINA and Honeywell)**

90. All other paragraphs are incorporated by reference.

91. Under 29 U.S.C. § 1132(a)(3), this Court may enjoin any act or practice that violates ERISA or the terms of the Plan, as well as grant other appropriate equitable relief, provided that such relief is not recoverable under 29 U.S.C. § 1132(a)(1)(B).

92. LINA is a fiduciary and owes fiduciary duties to Plan participants, including Mr. Killian.

93. Honeywell is a fiduciary and owes fiduciary duties to Plan participants, including Mr. Killian.

94. Under 29 U.S.C. § 1104(a), LINA and Honeywell are required to discharge their duties with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a).

95. Under ERISA, which is founded in trust principles, LINA and Honeywell are required to administer claims in the best interests of beneficiaries and participants as part of its fiduciary duty.

96. In multiple ways throughout the administration of Mr. Killian's claim, LINA and Honeywell breached their fiduciary duties pursuant to 29 U.S.C. § 1132(a)(3).

97. LINA's arbitrary and capricious claims handling generally constitutes a breach of fiduciary duty, because LINA's claims handling was discharged imprudently and caused Mr. Killian serious harm that cannot be recovered under 29 U.S.C. § 1132(a)(1)(B).

98. To the extent that LINA's denial of benefits caused Mr. Killian harm

unrecoverable under 29 U.S.C. § 1132(a)(1)(B), then that harm is recoverable under 29 U.S.C. § 1132(a)(3).

99. On information and belief, LINA instructs and/or incentivizes certain employee(s) to terminate fully-insured LTD claims and appeals based on bias or its financial interests.

100. Mr. Killian is informed and believes that LINA's employees are trained in administering claims in the best interests of LINA, not Plan participants.

101. LINA demonstrated bias and malice against Mr. Killian through its employees. Instead of fully and fairly reviewing the medical evidence, LINA unreasonably denied Mr. Killian's claim based on unreliable evidence.

102. LINA's failure to act prudently and in the best interests of Mr. Killian is a breach of fiduciary duty requiring appropriate equitable relief following discovery of LINA's conduct as it relates to Mr. Killian's claim.

103. Mr. Killian is informed and believes that LINA has targeted claims under the Plan for denial or termination, including Mr. Killian's, which is a breach of fiduciary duty.

104. On information and belief, LINA breached its fiduciary duty to Mr. Killian by terminating his claim in an effort to avoid its financial liability.

105. Honeywell breached its fiduciary duties by failing to perform the fiduciary duties imposed by ERISA, including having plan documents that meet the statutory requirement, failing to monitor LINA's claim handling, failing to insure LINA performed its duties under the Plan, and failing to take prudent or appropriate corrective action.

106. Mr. Killian has "other equitable relief" available to him in several forms, including but not limited to surcharge,[1] because the relief available under 29 U.S.C. § 1132(a)(1)(B) does not make Mr. Killian whole for his losses from LINA's and Honeywell's breaching conduct.

---

[1] A surcharge is a kind of equitable monetary remedy against a trustee, which puts the beneficiary in the position he would have attained but for the trustee's breach. Surcharge extends to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary.

-11-

107. The Court has broad discretion to fashion appropriate relief to make Mr. Killian whole and should mold the relief necessary to protect the rights of the participants.

108. Mr. Killian is entitled to injunctive or mandamus relief under 29 U.S.C. § 1132(a)(3).

109. Mr. Killian is entitled to enjoin any act or practice by LINA and Honeywell that violate ERISA or the Plan, or seek other appropriate equitable relief that is traditionally available in equity.

110. ERISA requires Liberty to provide Mr. Killian an opportunity for a full and fair review of any adverse benefit decision.

111. Under 29 U.S.C. § 1104(a), Liberty is required to discharge its duties with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a).

112. ERISA requires a "meaningful dialogue" between a claims administrator and a beneficiary. Under 29 C.F.R. § 2560.503(g)(iii), when a plan administrator denies a claim, the notification must provide "a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." It must also be relayed in a manner calculated to be understood by the claimant.

113. Liberty's Denial did not inform Ms. Neves of what additional material or information was necessary to perfect her claim. Instead, Liberty provided a generic list of types of medical records.

114. ERISA requires Liberty to provide Ms. Neves an opportunity for a full and fair review of any adverse benefit decision. ERISA requires Liberty to provide Ms. Neves an opportunity for a full and fair review of any adverse benefit decision.

115. Under 29 U.S.C. § 1104(a), Liberty is required to discharge its duties with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a).

116. ERISA requires a "meaningful dialogue" between a claims administrator and a

beneficiary. Under 29 C.F.R. § 2560.503(g)(iii), when a plan administrator denies a claim, the notification must provide "a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." It must also be relayed in a manner calculated to be understood by the claimant.

117. LINA's Denial did not inform Mr. Killian of what additional material or information was necessary to perfect his claim. Instead, LINA stated he may include written comments and new information, exemplified by a generic list of types of medical records.

118. Under 29 U.S.C. § 1104(a), LINA is required to discharge its duties with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in like capacity and familiar with such matters would use under 29 U.S.C. § 1104(a).

119. The Court can mandate that LINA inform Mr. Killian of what he needs to provide to perfect his appeal.

120. The Court can mandate that LINA inform Mr. Killian of its reason for rejecting the credible and substantial evidence provided by his treating providers.

121. LINA was unjustly enriched as a result of its breach of fiduciary duty violations, because it wrongfully withheld Mr. Killian's benefits for its own profit.

122. Honeywell failed to perform its fiduciary duties under ERISA and the Plan.

123. LINA acted with malice and in bad faith against Mr. Killian, which constitutes a violation of its fiduciary obligations.

124. ERISA "does not elsewhere adequately remedy" the injuries caused to Mr. Killian by LINA's and Honeywell's breach of fiduciary duty violations.

125. As a direct and proximate result of the breaches of fiduciary duty, Mr. Killian suffered actual, significant financial harm and has incurred financial expense.

126. Mr. Killian is entitled to prejudgment interest on the benefits to which he is entitled and on his damages at the highest legal rate until paid in full.

127. Pursuant to 29 U.S.C. § 1132(g), Mr. Killian is entitled to recover his attorneys' fees and costs incurred herein.

**WHEREFORE**, on all claims, Mr. Killian prays for entry of judgment against Defendants as set forth in this Complaint, which includes:

A.  All past LTD benefits under the terms of the Plan;

B.  Clarifying and determining Mr. Killian's rights to future benefits under the terms of the Plan;

C.  For any other benefits Mr. Killian may be entitled to receive under the Plan due to his disability;

D.  All other equitable relief that is proper as a result of LINA's and Honeywell's breaches of fiduciary duties;

E.  An award of Mr. Killian's attorneys' fees and costs incurred herein;

F.  An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

G.  For such and further relief as the Court deems just, equitable, and reasonable.

Dated this 29th day of May, 2018.

                OBER PEKAS RONSTADT

                By: *s/ Kevin Koelbel*
                    Erin Rose Ronstadt
                    Kevin Koelbel
                    Clayton W. Richards
                    Attorneys for Plaintiff